*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FCB ASSOCIATES, LLC,

      Petitioner-Appellant,

v

CITY OF ANN ARBOR,

      Respondent-Appellee.

UNPUBLISHED
August 29, 2024

No. 366685
Tax Tribunal
LC No. 21-003236-TT

Before: JANSEN, P.J., and REDFORD and D. H. SAWYER*, JJ.

PER CURIAM.

Petitioner, FCB Associates, LLC (FCB Associates), appeals as of right the Michigan Tax Tribunal's final opinion and judgment partially denying FCB Associates summary disposition and granting respondent, City of Ann Arbor (Ann Arbor), partial summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). The Tax Tribunal granted Ann Arbor partial summary disposition on the basis that a "transfer of ownership" under MCL 211.27a(6)(h) resulted in the uncapping of the property's taxable value under MCL 211.27a(3). On appeal, FCB Associates argues that the taxable value of the property should not have been uncapped because the transfer of ownership at issue was between spouses, and, therefore, exempt from uncapping. Because we agree with the Tax Tribunal that a transfer of ownership occurred under MCL 211.27a(6)(h), the taxable value of the property was properly uncapped. We affirm.

## I. FACTUAL BACKGROUND

The facts underlying this appeal are not in dispute. FCB Associates owns the parcel of property at issue: adjacent multistory commercial buildings located at 220 East Washington Street, Ann Arbor, Michigan (the real property). FCB Associates is a limited-liability company owned by the revocable trust of Dr. Hina Papo.

---

*Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

Before FCB Associates owned the real property, it was owned by the similarly titled partnership, FCB Associates.[1] The partnership was founded by Rene Papo[2] and Madeleine Vallier in 1990. Vallier's interest in the partnership was conveyed to John Langs, who later conveyed his interest to Rene's wife, Dr. Papo. Rene held a 51% interest in the partnership, and Dr. Papo held the remaining 49% interest in the partnership. Rene died on August 11, 2019, leaving Dr. Papo as the only remaining partner in the partnership. After Rene's death, the partnership conveyed the real property to FCB Associates via warranty deed in November 2020.

After the partnership conveyed the real property to FCB Associates, FCB Associates filed a property transfer affidavit with the assessor's office for the City of Ann Arbor in December 2020. The affidavit informed the assessor's office that the partnership conveyed the real property to FCB Associates and stated that the transfer was exempt from "uncapping" because the transfer was between entities under common control. In addition to the affidavit, FCB Associates sent a letter to the assessor's office informing it of Rene's death in 2019.

The assessor's office sent correspondence indicating an intent to uncap the taxable value of the real property for tax year 2020 as a result of Rene's death in 2019. However, the notice of assessment sent to FCB Associates for tax year 2020 did not uncap the taxable value. In July 2021, the Ann Arbor Board of Review met and uncapped the real property's taxable value for 2020 and 2021. Ann Arbor sent FCB Associates a summer 2021 tax bill reflecting the Board of Review's decision to uncap the property's taxable value for those years.

FCB Associates filed a petition in the Tax Tribunal for tax years 2020 and 2021 contesting the uncapping of the real property's taxable value. FCB Associates subsequently amended its petition to include tax year 2022. Ann Arbor and FCB Associates cross-motioned for summary disposition under MCR 2.116(C)(10). Ann Arbor argued that Rene's 2019 death triggered the dissolution of the partnership and transfer of Rene's majority interest in the partnership to Dr. Papo. Because Rene transferred a majority interest, Ann Arbor argued that the exemption for commonly controlled legal entities under MCL 211.27a(7)(m) was inapplicable. FCB Associates argued that the transfer was between spouses and did not qualify as a transfer of ownership under MCL 211.27a(7)(a). FCB Associates also argued that Rene's death did not trigger the transfer of his interest in the partnership, but that it later transferred to Dr. Papo as devised in his will.

The Tax Tribunal issued a final opinion and judgment without oral argument. First, the Tax Tribunal held that Ann Arbor did not have the authority to retroactively uncap tax years 2020 or 2021. However, the Tax Tribunal agreed with Ann Arbor that the taxable value of the property was uncapped for tax year 2022. The Tax Tribunal explained that the uncapping event was the death of Rene in 2019, which triggered the dissolution of the partnership and transfer of his majority interest in the partnership to the remaining partner, Dr. Papo. The Tax Tribunal expressly

---

[1] FCB Associates will only be referred to as the "partnership" to distinguish it from petitioner, FCB Associates, LLC.

[2] Because Dr. Papo and her husband, Rene Papo, share last names, we refer to Dr. Papo by her title and to Rene by his first name throughout this opinion.

rejected FCB Associates' argument that Rene and Dr. Papo's status as spouses or Dr. Papo's status as beneficiary of a will was controlling with respect to the August 2019 transfer. The Tax Tribunal further held that the conveyance of the real property from the partnership to FCB Associates in 2020 was not a transfer of ownership because both entities were under common control.[3]

This appeal followed.

## II. STANDARD OF REVIEW

In the absence of fraud, we review the Tribunal's decision for misapplication of the law or adoption of a wrong principle. *Mich Bell Tel Co v Dep't of Treasury*, 445 Mich 470, 476; 518 NW2d 808 (1994); see also Const 1963, art 6, § 28. The proper interpretation and application of a statute is a question of law we review de novo. *Anderson v Myers*, 268 Mich App 713, 714; 709 NW2d 171 (2005). Likewise, we review a Tribunal's decision to grant or deny a motion for summary disposition de novo. *Paris Meadows, LLC v Kentwood*, 287 Mich App 136, 141; 783 NW2d 133 (2010).

## III. UNCAPPING THE TAXABLE VALUE

FCB Associates argues that the Tax Tribunal nullified the exemptions for spousal transfers in MCL 211.27a(6)(f)(*i*) and MCL 211.27a(7)(a) when it held that the transfer of Rene's interest in the partnership after Rene's death was a "transfer of ownership" under MCL 211.27a(6)(h). We disagree.

Under Michigan law, "a property's taxable value is determined by the lesser of (1) the property's current state equalized value or (2) the property's taxable value in the previous year, minus losses, multiplied by 1.05 or the inflation rate, plus all additions." *TRJ & E Props, LLC v Lansing*, 323 Mich App 664, 670; 919 NW2d 795 (2018); see also MCL 211.27a(2). This tax structure "caps" the increase in a property's taxable value to the lesser of the rate of inflation or 5%. *TRJ & E Props, LLC*, 323 Mich App at 671. However, certain situations permit the "uncapping" of the taxable value. When an uncapping event occurs, "the taxable value of property may be reassessed according to the following year's state equalized value upon the sale or transfer of the property." *Detroit Lions, Inc v Dearborn*, 302 Mich App 676, 693; 840 NW2d 168 (2013).

As relevant to this appeal, the cap does not apply when a "transfer of ownership" occurs. MCL 211.27a(3). A transfer of ownership is a "conveyance of title to or a present interest in property, including the beneficial use of the property, the value of which is substantially equal to the value of the fee interest." MCL 211.27a(6). MCL 211.27a(6) provides a nonexhaustive list of the types of conveyances that qualify as a transfer of ownership. Under MCL 211.27a(6)(h), the following is a transfer of ownership:

---

[3] Neither party contests the Tax Tribunal's holding that the transfer of the real property from the partnership to FCB Associates via warranty deed in November 2020 was not a "transfer of ownership" because the transfer was between commonly controlled entities under MCL 211.27a(7)(m).

(h) Except as otherwise provided in this subdivision, a conveyance of an ownership interest in a corporation, partnership, sole proprietorship, limited liability company, limited liability partnership, or other legal entity if the ownership interest conveyed is more than 50% of the corporation, partnership, sole proprietorship, limited liability company, limited liability partnership, or other legal entity. Unless notification is provided under subsection (10), the corporation, partnership, sole proprietorship, limited liability company, limited liability partnership, or other legal entity shall notify the assessing officer on a form provided by the state tax commission not more than 45 days after a conveyance of an ownership interest that constitutes a transfer of ownership under this subdivision. Both of the following apply to a corporation subject to 1897 PA 230, MCL 455.1 to 455.24:

(*i*) A transfer of stock of the corporation is a transfer of ownership only with respect to the real property that is assessed to the transferor lessee stockholder.

(*ii*) A cumulative conveyance of more than 50% of the corporation's stock does not constitute a transfer of ownership of the corporation's real property. [MCL 211.27a(6)(h).]

The statute also lists certain types of conveyances that are excepted from the definition of "transfer of ownership." As relevant to this appeal:

(7) Transfer of ownership does not include the following:

(a) The transfer of property from 1 spouse to the other spouse or from a decedent to a surviving spouse. [MCL 211.27a(7)(a).]

Likewise, a conveyance by distribution under a will is a transfer of ownership except, as relevant to this appeal, when "the distributee is the decedent's spouse." MCL 211.27a(6)(f)(*i*).

The Tax Tribunal correctly held that Rene's death, which triggered a dissolution of the partnership and transfer of his majority interest to Dr. Papo, was a "transfer of ownership" under MCL 211.27a(6)(h). The Michigan Uniform Partnership Act, MCL 449.1 *et seq*., governs partnerships in this State. Under this Act, a partnership is "an association of 2 or more persons, which may consist of husband and wife, to carry on as co-owners a business for profit." MCL 449.6(1). The dissolution of a partnership is defined as "the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." MCL 449.29. A partnership may dissolve through various triggering events, including when a partner dies. MCL 449.31(4). When a partnership dissolves, the partnership does not terminate "until the winding up of partnership affairs is completed." MCL 449.30. During the winding-up period, the remaining partner winds up the partnerships affairs by dealing with the assets and liabilities accrued by the partnership. MCL 449.40.

Before Rene's death, the partnership's only partners were Rene and Dr. Papo. The partnership dissolved when Rene died, see MCL 449.31(4), triggering a "change in the relation of the partners . . . ." MCL 499.29. At the time of his death, Rene held 51% of the partnership. This 51% interest transferred to Dr. Papo when Rene died, and she became the sole partner during the

-4-

winding-up period. See MCL 449.30. The transfer of Rene's majority interest in the partnership to Dr. Papo upon the dissolution of the partnership was a "transfer of ownership" as contemplated in MCL 211.27a(6)(h).

Both before and after the partnership's dissolution, the subject real property was the property of the partnership. It was not owned by Rene or Dr. Papo as individuals. See MCL 449.8(1) ("All property originally brought into the partnership stock or subsequently acquired, by purchase or otherwise, on account of the partnership is partnership property."). When Rene died, it continued on as partnership property during the winding-up period. MCL 449.25(2)(d) ("On the death of a partner his right in specific partnership property vests in the surviving partner or partners . . . Such surviving partner . . . has no right to possess the partnership property for any but a partnership purpose . . . ."). The real property continued under the ownership of the partnership, but ownership of partnership itself changed in conformance with the definition of "transfer of ownership" under MCL 211.27a(6)(h). Accordingly, the Tax Tribunal did not err when it held that Ann Arbor properly uncapped the taxable value of the real property for tax year 2022. See MCL 211.27a(3).

FCB's argument that this transfer did not meet the definition of a "transfer of ownership" under MCL 211.27a(6)(h) because Rene and Dr. Papo were legally married rests on a misidentification of the parties to the transaction. Although true that transfers of ownership between spouses through direct transfer, see MCL 211.27a(7)(a), or distribution under a will, MCL 211.27a(7)(f)(*i*), are excepted from the definition of "transfer of ownership," the conveyance in this case was not between spouses. It was between partners. Partnerships, like other business entities, are a legal fiction. See *Bruun v Cook*, 280 Mich 484, 495; 273 NW 774 (1937). A partnership consists of "an association of 2 or more persons . . . to carry on as co-owners a business for profit." MCL 449.6(1). Michigan law recognizes that an individual can act in his or her individual capacity or as a representative of the partnership. See, e.g., *Hake v Coach*, 107 Mich 197; 65 NW 209 (1895). Rene and Dr. Papo chose to organize as a partnership and deal with each other as "co-owners [of] a business for profit" in relation to the real property. MCL 449.6(1) Dr. Papo's status as Rene's spouse was inconsequential to the dissolution of the partnership and transfer of his ownership interest to the remaining partner.

FCB Associates further argues that the partnership interest did not transfer at the time of Rene's death but was actually distributed from one spouse to another under a will that went through probate in 2022. Indeed, Rene had a will in which he generally bequeathed his property to his wife. However, Dr. Papo's status as Rene's beneficiary only entitled her to Rene's share of profits arising from the partnership. See MCL 499.27(1). It did not prevent the partnership from dissolving in 2019 or Rene's majority interest transferring to his partner.

The Tax Tribunal did not make a nullity of MCL 211.27a's protections for transfers between spouses. Instead, it applied the plain language of MCL 211.27a(6)(h) to a partnership.

Rene's death resulted in a transfer of ownership such that Ann Arbor could uncap the taxable value of the real property for tax year 2022.

Affirmed.

/s/ Kathleen Jansen
/s/ James Robert Redford
/s/ David H. Sawyer